We'll start with 19-1250. Uh, Ajaj, I hope I pronounced that correctly, versus Federal Bureau of Prisons. Um, Ms. Buchanan, you ready to proceed? I am. Thank you. Good morning and may it please the court. My name is Julianne Buchanan and I'm a student attorney representing Mr. Ahmad Ajaj, the appellant in this case. I'm here today with supervising attorney Nicole Godfrey. There are two issues at the heart of today's appeal. First, the district court erred in, uh, the district court erred in dismissing Mr. Ajaj's injunctive RFRA claim as moot. This claim was not moot at the time of dismissal because the court could still afford meaningful relief to Mr. Ajaj by ensuring his access to group prayer. Even if the court did properly find Mr. Ajaj's claim was moot, it failed to apply the voluntary cessation exception of mootness, um, and it failed to hold the BOP to its heavy burden. Second, Tanzan v. Tanvir affirmatively answered the question of whether monetary damages are available against individual defendants in their personal capacity under RFRA. Because of this, this court should reverse and remand Mr. Ajaj's RFRA damages claims to the district court to allow them to proceed. I'd like to start with the mootness issue first. The BOP has a national policy prohibiting group prayer in all common areas. This policy substantially burdens Mr. Ajaj in two ways, um, under Abdul Hasid v. Calbon, um, another circuit case. Ms. Buchanan, may I interrupt you just for a second? Um, I, I had a question about the national policy. Where is it in the record? Is there, when you're saying national policy, are we talking about a, a document or regulation of some kind? So, this, uh, policy was testified to by the BOP's 30B6 designee, um, in the appendix volume 15 on page 2908, um, where their designee said that group prayer is not allowed in any common area of any facility in the Bureau of Prisons. Thank you. I thought, Ms. Buchanan, that the testimony in the 30B6 deposition was that group prayer is allowed only in the chapel. Did I misunderstand that? This is true that group prayer is only allowed in the chapel. However, the chapel is only open at designated times, and thus when the chapel is closed, there's no other opportunity for Mr. Ajaj to participate in group prayer. But, but, but the chapel itself would be a common area, right? Um, yes, I, I believe so. That's the only exception to the policy. Thank you. So, tell me, Ms. Buchanan, what the consequences are of a possibly mistaken determination that the case, that this claim was moved? It was a dismissal without prejudice. Um, if you're correct that damages are permitted, um, then you're going to have to remand. At that point, can you just move to reinstate that claim? Why do we need to get involved in this? What, what's, what advantage is it to you for us to decide that the case was not actually moot when Judge Jackson dismissed that claim? Yes. So, Mr. Ajaj sincerely believes that he needs to participate in group prayer with another Muslim whenever possible. Um, this, because the district court failed to consider the evidence, um, in front of it at the time of dismissal in the light most favorable to Mr. Ajaj, it failed to consider how his religious practice is substantially burdened by the GOP's policy in forcing him to choose between risking punishment in order to engage in group prayer or abstaining from a sincerely held religious belief. And so because of this and because of the district court's erroneous dismissal, Mr. Ajaj has not had access to group prayer since, uh, that point in time. And he continues to face this Hobson's choice of having to decide whether to risk punishment in order to engage in his religious exercise or, uh, abstain from something that he sincerely believes he must do. Um, that addresses the merits of your claim, why you want to pursue the claim. My question is why we have to decide whether the case was actually moot at the time, Judge Jackson, the claim was moot at the time Judge Jackson dismissed it since that issue could be re-raised with him on remand when it's remanded for the damages issue. If, if we do that, what, what advantage is there to our deciding that which may involve some factual determinations that this court is not particularly set up to handle. So this case has been, um, Mr. Ajaj has counsel and extensive discovery has already been conducted on the group prayer claim because of this, um, it would be prudent for this court to decide the mootness issue rather than, um, have Mr. Ajaj begin new litigation, uh, and so the reason... The alternative you're suggesting is new litigation, but if this litigation is not complete because we have to remand for other things, why, why shouldn't Judge Jackson be the one to decide whether it was mooted or not? He can make the necessary fact findings and then it would be part if he finds it wasn't moot, then he can consider this, the issue of group prayer and whether injunctive relief is appropriate. So, uh, the district, the reason that this court needs to rule is that the district court was presented with evidence before, um, in the post-judgment motion and again ignored the evidence showing that Mr. Ajaj's claim was not moot. And so because the district court has to decide this issue. Let me just pursue it one more. You're saying it's wrong because of events. You're basing your claim that it was wrong on events that occurred after judgment. We have some authority, the Silvery Minow decision that says we shouldn't consider post-judgment evidence in support of their, of a case not being moot. To me, that's probably controls our court, but why, why should we not follow that precedent? So there was actually evidence in front of the district court prior to dismissal that showed that Mr. Ajaj's access to group prayer was temporary and sporadic and the district court failed to consider this information. And so, uh, this information was present before judgment occurred. And because the district court, um, failed to properly evaluate the facts, Mr. Ajaj presented though that improper fact finding is what led to the incorrect legal conclusion that the claim was moot. And so isn't it, uh, is it a correct understanding of the, of the record that at the time that judge Jackson ruled on the mootness question, he, he, he may have gotten a fact wrong. He, he, I think he assumed that Mr. Ajaj could, could pray five times a day, which is what his sincerely held religious belief requires. But in fact, and I think the government has conceded this, that it's less than that. It that he had the opportunity to pray. Um, yes. And however, this access was temporary and there was no guarantee that Mr. Ajaj would remain in this 18 month long program. And so, um, him having that partial access is still a burden because he had to weigh whether to follow the BOPs national policy that he knew about, um, and risk punishment, or he would have to, um, abide by the, the memo in the life connections program that allowed him partial group prayer, even though that wasn't going to be a long-term resolution. When did you first bring to the court's attention this error by judge Jackson? Um, we raised it after, uh, judge Jackson dismissed the claim initially. Um, let me find that for you. Just one second. In the motion to reconsider, we did raise, uh, judge Jackson's failure to consider this information. Um, and we raised it again in our motion for relief from order, uh, which is in volume 23 of the appendix. Did judge Jackson, uh, rule on your motion to reconsider, uh, with any findings or reasoning, or was it a summary order? Uh, there was no reasoning with the order. It was a minute order where he denied the motion to reconsider. Um, I'd like to turn to the voluntary cessation exception. Even if the district court properly found Mr. Ajaj's claim was moot, the district court failed to apply the voluntary cessation exception, and it failed to hold the BOP to its heavy burden. Under, I'd like to start with prong two, um, which is interim events have completely and irrevocably eradicated the effects of the violation. Mr. Ajaj could not pray in a group, um, at the time of dismissal consistently, and there has been no policy change on the part of the BOP, uh, to change this group prayer ban. And so because of this, Mr. Ajaj still is burdened by this policy in the way that, um, it prohibits him from engaging in his sincerely held religious belief. And so the effects of the violation are still ongoing. Um, to the first prong, which is, uh, whether, um, there's no reasonably likelihood that the events will occur. Um, Mr. Ajaj's time in the Life Connections program ended shortly after trial in this case, and, uh, his access to group prayer was, like I said, temporary and sporadic. Um, and he has continued to face the Hobson's choice of having to decide between risking punishment to engage in group prayer or abstaining. And because of this, uh, the BOP did not present any evidence that Mr. Ajaj could stay in the Life Connections program and continue having access to group prayer. Um, and it has afforded meaningful relief to Mr. Ajaj in the form of an injunction mandating access for him specifically to have group prayer. It can also issue declaratory relief stating that the BOP's blanket ban on group prayer violates Mr. Ajaj's rights under RFRA. I'd like to turn to the second issue now. Um, Tanzanby Tanbir affirmatively answered the second question on appeal. And this court should reverse and remand the damages claims to the district court to allow them to proceed against the individual appellees. The district court did not consider qualified immunity in this case because it dismissed on the theory that damages were not available against individual defendants under RFRA. And so, um, because of this, this court should remand so that we can have further briefing on the issue of whether qualified immunity is an available defense to RFRA claims. If the court decides that qualified immunity is an available defense to RFRA, it should, uh, find that the individual appellees are not entitled to it here. Kalani V. Sessions established that a plaintiff only needs to plead a sincerely held religious belief and a substantial burden under RFRA in order to plead a claim. I'm sorry to interrupt you, but can I ask you a question about the qualified immunity? Now, assuming that you have not forfeited that argument as far as the availability of qualified immunity, and we address qualified immunity on the merits rather than remanding it for the district court to determine, we certainly had some signals, uh, from the Supreme Court, including, uh, one recent unanimous per curiam reversal of a panel decision bond that our court had issued, as well as a recent Ninth Circuit opinion, where the Supreme Court has reminded all of our circuits that we need precedents that are, uh, either materially factually similar or essentially, uh, materially indistinguishable, and how can we say that there are precedents in this kind of situation that are so close that would have put these BOP officials on notice that no confident BOP official would have, uh, would have done what has been alleged, uh, consistent with, uh, the Constitution, consistent with RFRA? So the RFRA statute provides for an affirmative defense already that states government officials can escape liability only if they demonstrate a compelling government interest furthered by the least restrictive means, and so because this is so patently obvious, um, and there's case law indicating what, where the line is for substantial burdens, it should be patently obvious to those BOP officials that their refusal to accommodate someone's religious exercise is a violation of RFRA unless they show that affirmative defense. And I realize I'm out of time, so I'd like to say, uh, respectfully ask that this court reverse and remand Mr. Ajax's claims to the district court. Thank you. Thank you. Thank you. Mr. Shah. Good morning. May it please the court, I'm Carl Shah, representing the Federal Bureau of Prisons and the individual defendants. As this court emphasized in the Rio Grande Silbury Minow case, a plaintiff's allegations of legal wrongdoing must be grounded in a concrete and particularized factual context. They're not subject to review as free-floating ethereal grievances, and what that means here is that the mootness analysis must look to the claims and allegations that are the subject of the operative complaint, not to the way that Ajax tried to reformulate those claims over the course of the lawsuit and on appeal. Mr. Shah. Yes. Is there any reason why in order to understand the scope of Mr. Ajax's RFRA claim, we wouldn't look in part, at least, to the prayer for relief in his complaint, which specifically states that he's seeking an injunction against all defendants in their official capacities requiring BOP staff at all facilities where BOP places Mr. Ajax to allow him to pray five times daily with at least one other Muslim inmate? How does that not answer the question about the scope of the RFRA claim? Yes, and to be clear, that's the only place in the complaint that even alludes to any thing beyond ADX, and I think the reason that that cannot keep this claim live is because, of course, a prayer for relief must be grounded in a particular claim, and it's the claim that defines the dispute, and this court has said that in order to present a live case or controversy, the claims must be definite and concrete, and so the claims here have to do with ADX, and the nature of those claims can't be expanded or changed by simply the relief that's sought, and so here, because what he needs to prove are the allegations in the complaint in order to support his claim, and of course, he's not entitled to any relief unless he proves those particular claims, that the relief itself can't save the claims, and I think that a perfect example of that or an example of the problem with relying on the prayer for relief is, of course, here, if this case continued and were about some nationwide policy that has come up with allegations that postdated the complaint, this case would be sent back to litigate something that was not talked about anywhere in the complaint, because clearly, everything that is in the complaint is now inapplicable, and so without that complaint, the prayer for relief cannot stand alone. You need the actual complaint in order to say what the claims are. Well, what are the consequences? Go ahead, Judge Becker. I'll answer. I'm concerned about the consequences of your thinking, particularly when prisoners are transferred a lot. Your amendment would prevent the Bureau of Prisons, or permit, I should say, the Bureau of Prisons to move cases by saying, okay, you can do it in this prison, but we're going to move you to you can file another claim and go on ad infinitum. That's not going to be acceptable. That certainly seems contrary to the doctrine repeating the misconduct, just stopping it long enough to get the case dismissed. Tell me how you deal with that concern. Yeah, right. So, a few points. First of all, of course, in this particular case, the district court actually said that there was no reason to believe that this transfer was about anything beyond legitimate penological interests, but more to your point here, I think if Ajaj were able to put together a claim and a complaint that does what he's now trying to do on appeal, in other words, to identify a system-wide policy that continues to apply throughout the BOP, then perhaps that complaint and that claim could survive a transfer. The problem for him is that the complaint he asserted in this case did not assert that. And to be honest, perhaps the reason that is, is because that claim is a much more If that complaint had been asserted, if that claim had been asserted, then that claim would survive under this court's case law. I think the other way that it possibly could survive is if you have a particular restriction that whether or not it is nationwide, it is a restriction that continues to apply in the same way and the same context after a transfer. In that case, again, it could survive. Now, isn't that precisely how the district court understood the claim? I mean, what I'm looking at, and I would appreciate understanding the government's perspective on whether this is even relevant to the inquiry. It seems that in denying Mr. Ajaj's leave to file a supplemental complaint, this is document 210, that the court said, expressed its understanding of this very issue and looked at whether if he is not being provided the things in the new facility, then it would seem that the complaint does not move. And he's talking here about ADX's revised pill line. But the point is that what I think that what the judge was getting at is that if he's being provided all those things at the new facility, then his claims are moved. I agree that the defendant cannot automatically move the complaint by transferring the plaintiff to a different facility and arguing that the claims focused solely on the ADX. Of that's where he was. But this court's focus is on the substance of what he claims to have been denied and whether the denial violated his constitutional rights. That seems to me to be directly contrary to the government's predicate theory that animates your mootness argument. So tell me what I'm missing. Yeah, two things. First of all, I think that the court clearly the claims differently than the government is arguing here. However, the district court denied the motion to supplement the complaint. So what we are left with is the operative complaint. And this court's review is the novo of that operative complaint to see what is actually asserted in that case. And I think although outside of the prison context, I think the Rio Grande silvery minnow case really addresses this pretty well in talking about what are the target of the plaintiff continues to have ongoing grievances. Now, even under the district court's understanding, I think it's significant that what the court said is with respect to three of the claims, the court actually said, the restrictions he's challenging the complaint do continue to apply to him in the same way at Terra Haute. That's why he allowed those plans to proceed. Importantly, however, the group prayer claim does not apply to him the same way at Terra Haute. And although he might have continued to have problems with the restrictions at Terra Haute, those are very, very different kinds of restrictions than the ones he was complaining about ADX. So for example, while at ADX he was complaining about a complete ban on group prayer at Terra Haute, his complaints were narrowed to where he could pray, the specific times he could pray, and specifically the one or two, depending on the time of year, times that were outside of the kind of normal daylight hours. And so again, I think what's important there is even under that, our first, our primary argument is essentially that the court's understanding of the complaint was incorrect. And of course, this court, particularly in a jurisdictional issue, looks there. But even under the court's analysis, the restrictions that he was ultimately challenging at Terra Haute were very different than the ones that were in the complaint. Well, go ahead, Judge Becker. Thank you, Judge. So I just want to ask you about your answer to Judge Rossman. It seems to me that you're doing two things. One is you're saying, Mr. Rajaj, we're going to hold your feet to the fire to that complaint. And yet we, the government, are going to go outside the complaint in order to talk about the transfer to Allentown, the transfer to Terra Haute that are outside the complaint. And that's your prerogative. There are two different ways to challenge jurisdiction under 12b1, a facial attack based on the complaint, but you're not doing that. You're making an evidentiary challenge under 12b1. So it seems to be counterintuitive, or a little disingenuous even, to say, Plaintiff, you haven't shown a correlation between the allegations in your complaint and the prayer for relief on pages 153 and 154 that Judge Rossman is pointing to. My second related question is under RISAC, Judge Briscoe said, as long as there is some relief that can be available to the plaintiff, then it is not new. And as Judge Rossman pointed out, he has specifically asked for a system-wide injunction against the BOP, which is a defendant. And your argument seems to me a classic 12b6 argument that, well, you haven't justified that prayer based on the underlying allegations of the complaint, but this is under 12b1, not 12b6. It seems to me that you're conflating the standards under 12b1 and 12b6. So to your first point first, what we're doing is the same thing that was done in that Rio Grande Silvery Minnow case. What we're doing is we're looking to the complaint for purposes of defining what the claims are. Once we know what those claims are, we can look outside the complaint to determine whether those claims are moot. So it's not a situation where you allow things outside the complaint to morph the claims as the case goes on. We simply look to the complaint to the claims are, and then certainly, a judge would be permitted to present evidence of things outside the complaint in order to prove that those claims are not moot. Now, to your second point about Razak, the important point there is that the particular restrictions, again, the ones that were challenged in the complaint, continued to have an effect on the prisoner after he left ADX. And that's because once he had been at ADX, he was subject to particular restrictions that followed him as he went on. The difference here is that the claims that he's asserting, and again, I realize this is assuming our correctness as to the premise, but the claims that he is asserting are about what's going on at ADX. Once he moves on, those restrictions at ADX no longer have any effect on what they did in the Razak case. Our discussion makes me feel more strongly that the mootness issue belongs before Judge Jackson, because he will know how the parties were litigating the case. Yes, it's not a 12 v 6 motion, so we're not stuck with the allegations in the complaint. The judge can see how the case is developing. Things are implicitly amended all the time, and it's how it's tried that matters. And Judge Jackson will have a much better feel for that than this court is going to. And then he can consider the evidence now and say, look, I thought they were promising that they would allow him group prayer, and maybe I made a mistake about the timing or how often he was allowed it. But it seems to me that Judge Jackson is the person best equipped to determine whether the allegations in the complaint, as tried before the court, have been mooted by later events. Do you have any problem with if it's going to be sent back down because of the damages issue? Do you have any problem, do you see any harm, any inconvenience, any prejudice to the government from allowing that to be considered by Judge Jackson on remand, whether to allow the complaint? And the dismissal was without prejudice, so presumably the judge could add, could allow an amendment to the complaint anyway. What's wrong with that? So first of all, of course, our position is that it should not be remanded, and I'll try to get to that in my last minute. But to your point, I think this is one place where I guess I would agree with Ajaj, which is the district court essentially decided this exact issue and determined that the restrictions at Terre Haute were sufficiently different than the ones that he challenged at ADX that the claims were not moved. He then denied it on motion for and so, you know, certainly the court could do that and have him decide again, but I guess that would be my reaction to that. I do just want to spend the last minute. You do agree that the dismissal was without prejudice? Correct, yes. So there's no question Mr. Judge could bring a lawsuit making these challenges to the restrictions at other prisons, right? Assuming procedural hurdles such as exhaustion and that the venue in Colorado is the proper place to assert the um, yes. Okay. I just want to hit two very quick points on qualified immunity. First of all, what we're talking about here is not whether the policies should be changed, whether these policies infringed his rights, but whether individual government officials should be individually liable for essentially, in many cases, simply going along with the policies of the prison with regard to their ordinary employment functions. And so that is and should be a very high bar before the individual liability should attach. And second of all, let me ask you, are you, the standard is something different from clearly established law? No, no. I'm just saying that's a reason that qualified immunity should apply. But on qualified immunity, I think that you need clearly established law, both as to whether it's substantial interest and the compelling government, the lack of a compelling government interest, because without both of those things, you don't actually have a violation of the law. And so with that, can I have a question, Judge Hart? Yes, please. Yeah, Judge Becker. So, but I just, I'm curious, Mr. Shaw, and this is on a 12-B, 12-B motion that is, so you're saying that to defeat qualified immunity, the plaintiff has to specifically allege not only a substantial burden, but that the government lacks a compelling governmental interest. And if the latter, which I assume, based on what you just said, the answer is yes, well, so what does the plaintiff need to allege other than they don't have a compelling governmental interest? I mean, it seems to me that it's putting the cart before the horse to say, you get qualified immunity on a motion to dismiss, not a summary judgment, based on the failure to allege the lack of a compelling interest. Right. What I'm saying here is that when qualified immunity applies, it must be clear to every reasonable official that there's a violation of the law. There is not a violation of the law under RFRA unless there is no compelling government interest, because of course, prisons interfere with substantially burdened prisoners' exercise of rights all the time. And so before a prison official can be liable for doing that, it must be clear to them that what they're doing violates the law. And if there's not law establishing that it is actually a violation, then they shouldn't be held individually liable. Thank you. Ms. Buchanan, I'm going to give you one minute for rebuttal, but not more than one minute. Thank you, Judge Hart. First, I'd like to start by saying that it doesn't matter that Mr. Ajax was transferred because the substantial burden on his religious practice remained. And so the transfer from ADX to Terre Haute, as we discussed, it didn't change the contours of Mr. Ajax's claim because he continued to be substantially burdened by the BOP's national policy. Additionally, Congress already provided a defense in the RFRA statute that would protect government officials acting in good faith towards people's religious exercise. And lastly, I'd like to address the clearly established point. The burden is squarely on the government to provide the compelling government interest in least restrictive means, as established by this court in Galani v. Sessions. And because of this, the plaintiff only needs to show clearly established law as to the substantial burden, which Mr. Ajax has. And because of this, he pled clearly established law violations against individual defendants. Thank you. Thank you, counsel. Thank you, counsel. Cases were excused.